UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMIAN D. WOODMORE,

    Plaintiff,

v.

FARMINGTON HILLS POLICE
DEPARTMENT and WILLIAM
DWYER,

    Defendants.

_____/

Case No. 09-12967

HONORABLE DENISE PAGE HOOD

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND
DISMISSING ACTION**

**I.    BACKGROUND**

On July 28, 2009, Plaintiff Damian Woodmore ("Woodmore") filed the instant suit against Defendants Farmington Hills Police Department ("FHPD") and William Dwyer ("Dwyer") alleging a two-count Complaint of wrongful discharge under 42 U.S.C. § 1983 and intentional infliction of emotional distress. This matter is before the Court on Defendants' Renewed Motion for Summary Judgment. Defendants' first motion was withdrawn by the parties' agreement. Response and reply briefs have been filed by the parties and a hearing held on the matter.

Woodmore was employed by the FHPD as a Police Officer. Dwyer is the Chief of Police of the Department. As an officer, Woodmore was a member of the Police Officers Association of Michigan ("POAM"). The terms of his employment were governed by a collective bargaining agreement between the City of Farmington Hills and POAM. The bargaining agreement provided that the FHPD promulgate "Regulations and Operational Guidelines." The Regulations do not

provide Chief Dwyer the authority to terminate an employee but does provide the authority to suspend an officer pending an investigation of any infraction. Serious infractions must go through the Police Trial Board which then determines any appropriate discipline, if warranted. (Regulations, § 7.11)

The FHPD claims that in August 2007, it became aware that certain monies, seized as evidence, were missing. An internal investigation was launched and the investigation revealed that Plaintiff checked out money from FHPD's Property Section between December 26, 2006 through July 26, 2007, in the amount of $7,021.50, but could not recall where the money went. (Ex. K, Defendants' Br.) The FHPD's investigation was turned over to the Oakland County Sheriff's Department. While the Sheriff's investigation was ongoing, Plaintiff was placed on administrative leave, with pay and benefits, on September 10, 2007. The Sheriff's Department completed its investigation on November 2, 2007 resulting in the issuance of a warrant charging Plaintiff with four felony counts and one misdemeanor count of larceny by conversion and misconduct in public office. (Exs. O and P, Defendants' Br.) Plaintiff was placed on unpaid suspension pending the adjudication of the criminal charges. Plaintiff was arrested on January 11, 2008 and was bound over for trial before the Oakland County Circuit Court.

On June 2, 2008, Plaintiff entered a guilty plea on four misdemeanor counts of larceny by conversion over $200 but less than $1,000. Plaintiff agreed to resign as a Police Officer with the FHPD. This agreement was placed on the record during Plaintiff's plea hearing. (Ex. C, Defendants' Br.) On the same day, Plaintiff submitted a letter of resignation to the FHPD, stating,

> On June 2, 2008 I pled guilty to four misdemeanor counts of larceny by conversion.
>
> I am resigning from the Farmington Hills Police Department effective

> November 1, 2007, the date that the warrant for my arrest was issued. I am resigning freely, voluntarily and without coercion promise or duress.

(Ex. D, Defendants' Br.)  Plaintiff also agreed to pay the FHPD $7,000.00 in restitution.  *Id.*

Plaintiff thereafter filed the present lawsuit on July 28, 2009 alleging that Defendants discriminated against him because of his race.

## II.     ANALYSIS

### A.     Standard of Review

Defendants move for summary judgment under Rule 56(c) of the Rules of Civil Procedure. Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper.  *Celotex Corp.,* 477 U.S. at 322-23.  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Race Discrimination under 42 U.S.C. § 1983

#### 1. *Prima Facie* Case

As 42 U.S.C. § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979). Claims of employment discrimination under § 1983 must be analyzed using the same analytical framework applicable to Title VII actions. *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir. 2000). Under the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), a plaintiff must establish a *prima facie* case and create a presumption of discrimination by showing by a preponderance of the evidence: (1) that he/she belongs to a protected class; (2) that he/she was subjected to an adverse employment action; (3) that he/she was qualified for the job; and (4) that he/she was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); and *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999). Alternatively, a plaintiff could establish a prima facie case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir. 1987).

### 2.     Adverse Action

Defendants claim that Plaintiff is unable to show that he was subject to an adverse employment action. Defendants submit a copy of Plaintiff's letter of resignation which expressly notes that Plaintiff "freely, voluntarily, and without coercion promise or duress" resigned from his employment. (Ex. D, Defendants' Br.) Plaintiff's criminal lawyer reviewed and also signed the letter. *Id.* The resignation was also placed on the record when Plaintiff entered his plea of guilty. (Ex. E, Defendants' Br.) Defendants submit that a letter of resignation does not constitute an adverse employment action by Defendants.

Plaintiff's Complaint alleges he was forced to sign a letter of resignation. (Comp., ¶ 26) In his response, Plaintiff claims he suffered adverse employment action because he was constructively discharged by Defendants. Beginning in February 2004, Plaintiff was moved laterally into the detective bureau. From February 2004 through September 2007, Plaintiff claims he began to come into contact with Defendant Dwyer, who subjected him to comments and epithets regarding Plaintiff's race. (Ex. B, Plaintiff's Br.) Plaintiff claims Defendant Dwyer would greet White detectives with a customary handshake but would greet Plaintiff with a series of complex hand maneuvers, such as a "black handshake." (Ex. B, pp. 124-28, Plaintiff's Br.) Defendant Dwyer would address Plaintiff with the salutation "Power to the People" along with his fist raised in the air. (Ex. B, pp. 124-25, 128, Plaintiff's Br.) Plaintiff claims Defendant Dwyer behaved in this manner toward Plaintiff in front of other employees, all of whom were subordinates of Defendant Dwyer. Plaintiff claims other officers subsequently began to make comments that Plaintiff was only in the detective bureau because he was Black. Plaintiff claims he felt humiliated and threatened but had no recourse since the source of the problem stemmed from his highest superior, Defendant Dwyer.

5

(Ex. B, Plaintiff's Br.)

On August 27, 2007, Plaintiff was laterally moved to the position of school liaison. (Ex. D, Plaintiff's Br.) He claims that it was not his desire to move to this position and that he was happy in the detective bureau and felt he had a better chance of advancement if he stayed in the bureau. Plaintiff states his White superior wanted him to go to the high school because he was Black, and it would be "good for him." However, Plaintiff admits he was still handling his high profile cases from the detective bureau while serving as the school liaison. As a result of handling these high profile cases, items from several cases, including money, were stored in his desk drawer, which was not the procedure. Plaintiff agrees money came up missing as part of ongoing criminal investigations. Plaintiff was placed on administrative leave in September 2007 pending an investigation and later suspended without pay. (Ex. E, Plaintiff's Br.) Plaintiff claims that his case was turned over to the Oakland county Sheriff's Department for an independent investigation which led to criminal charges. (Ex. F., Plaintiff's Br.) Plaintiff alleges the case went on for a nearly a year, leaving Plaintiff on the verge of bankruptcy. In the best interest of his family, Plaintiff asserts he pled to four counts of misdemeanor larceny and was not allowed to return to his position, unlike his White coworkers. Plaintiff argues that his employer placed him in a position where he felt he was forced to sign the letter of resignation. (Ex. G, Plaintiff's Br..)

Generally, a plaintiff does not suffer an adverse action where a plaintiff submits a voluntary resignation letter. *Sims-Eiland v. Detroit Bd. of Ed.,* 173 F. Supp. 2d 682, 689 (E.D. Mich. 2001). A voluntary resignation that amounts to a constructive discharge may be an adverse employment action. *See, Smith v. Henderson,* 376 F.3d 529, 533-34 (6th Cir. 2004); *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 886-87 (6th Cir. 1996). "To constitute a constructive discharge,

6

the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1080 (6th Cir. 1999). In order to determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined. *Id.* Intent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions. *Id.* A plaintiff must show more than a Title VII violation to prove constructive discharge. *Id.* It is not enough that a plaintiff can prove a hostile work environment under Title VII. *Id.* The Sixth Circuit's two-pronged test for constructive discharge requires "an inquiry into both the objective feelings of an employee, and the intent of the employer." *Yates v. Avco Corp.,* 819 F.2d 630, 635 (6th Cir. 1987).

The objective component exists if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Held v. Gulf Oil Co.,* 648 F.2d 427, 432 (6th Cir. 1982). In determining whether a reasonable person would have felt compelled to resign, courts have generally considered the following factors: 1) demotion; 2) reduction in salary; 3) reduction in job responsibilities; 4) reassignment to menial or degrading work; 5) reassignment to work under a younger supervisor; 6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or, 7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Logan v. Denny's, Inc.,* 259 F.3d 558, 569 (6th Cir. 2001).

The intolerable working conditions Plaintiff cites in his response include a lateral move within the department from the detective bureau to school liaison, harassment and discrimination by Defendant Chief Dwyer and the criminal investigation of missing monies which led to Plaintiff's

7

plea of guilty and ultimate resignation as part of the plea.

As to the lateral move from the detective bureau to school liaison, the Sixth Circuit has noted that dissatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge. *Smith,* 376 F.3d at 534. Plaintiff asserts that he was pressured into applying for the position of school liaison because he was afraid that if he did not do so, his career would be hampered. Even though he was in the new position, Plaintiff claims he was still handling some of his high profile cases from the detective bureau. Plaintiff states that the move to the position of school liaison was a lateral move and he does not claim that he lost any compensation or benefits as a result of the move. Plaintiff has not shown a genuine issue of material fact that his transfer from the detective bureau to school liaison is sufficient to establish constructive discharge. Plaintiff was still able to handle cases from the detective bureau while performing the position of school liaison.

Regarding the harassment and discrimination by Defendant Chief Dwyer while in the detective bureau, although the actions by Defendant Dwyer appear to be inappropriate and humiliated Plaintiff, Plaintiff indicates in his response brief that he was "happy in the detective bureau." (Plaintiff's Br., p. 7) Offhand comments and isolated incidents of offensive conduct, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *Faraghar v. City of Boca Raton,* 524 U.S. 775, 788 (1998). Although Defendant Dwyer's comments offended Plaintiff, it is not clear that these comments were not so extreme that they were *intended* to force Plaintiff to resign from his position, in light of Plaintiff's admission that he was happy in the detective bureau. Plaintiff did not complain of Dwyer's actions until after Plaintiff's resignation, which was part of his plea bargain with the Prosecutor's Office and nine

8

months after Plaintiff had any contact with Dwyer. (Plaintiff's Dep., pp. 317-18, 340, 342) The Sixth Circuit has rejected hostile-environment claim arising from facts far more compelling that those alleged in this case in *In re Rodriguez,* 487 F.3d 1001 (6th Cir. 2007). The Sixth Circuit noted that *prima facie* case was not shown where a male supervisor continuously made sexually suggestive comments about the female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt picket, leered at her and told that if he had someone like her, he would never let her leave the house. *Id.* at 1010-11 (quoting *Clark v. United Parcel Serv., Inc.,* 400 F.3d 341, 352 (6th Cir. 2005)). The comments in this case are less compelling than those noted by the Sixth Circuit.

Plaintiff appears to claim that his resignation as a result of a plea agreement after criminal charges were brought against him was a result of Defendants' discriminatory actions. In his response, Plaintiff does not attempt to address his statements before the trial court that his plea was freely and voluntarily made. If the Court were to find that Plaintiff was forced to resign from his position, this would result in a finding that Plaintiff's plea was not freely and voluntarily made. Any such findings would implicate Plaintiff's misdemeanor conviction, which this Court cannot so determine.

To recover monetary damages for an allegedly unconstitutional conviction or imprisonment, a § 1983 plaintiff must prove that the conviction or sentence was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a federal writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A § 1983 suit in which a plaintiff seeks damages in connection with proceedings leading to his allegedly wrongful state court conviction is not cognizable where the plaintiff's conviction has never been

9

reversed or otherwise invalidated. *See Patrick v. Laskaris*, 25 F. Supp. 2d 432, 433 (S.D.N.Y. 1998). Because Plaintiff does not allege that his conviction has been overturned, expunged, or called into question by a writ of habeas corpus, his allegations relating to his criminal prosecution, conviction, and incarceration against the defendants fail to state a claim for which relief may be granted and must, therefore, be dismissed. *See Adams v. Morris,* 90 Fed. Appx. 856, 858 (6th Cir. 2004); *Dekoven v. Bell,* 140 F. Supp. 2d 748, 756 (E.D. Mich. 2001).

Plaintiff is unable to show that his voluntary resignation as part of a plea agreement amounts to a constructive discharge and an adverse employment action by Defendants. Because Plaintiff cannot establish an essential element of his *prima facie* case, his claim of racial discrimination cannot succeed. *See Clay v. United Parcel Service, Inc.,* 501 F.3d 695, 703 (6th Cir. 2007).

### 3. Similarly Situated Employee/Comparable

Defendants assert that Plaintiff has not identified a similarly situated employee with whom Plaintiff seeks to compare himself. Plaintiff identifies the following comparables: Robert Tiderington, Michael Mackey, John Handy, Stacey Swanderski-Van Meter, Lt. Anderson, Sgt. Hubbard, and, Mitchell Skazalski. Plaintiff argues that there are many instances in which Defendants showed preferential treatment to White employees, but that these documents were never turned over to Plaintiff. Defendants respond that the requested discovery was provided to Plaintiff and that no further requests to supplement the discovery were made to the defense. Defendants note that no motion to compel was filed regarding any failure to provide documents. Plaintiff's response to the motion is the first instance where Plaintiff has complained of not receiving the appropriate documents during discovery.

An employee with whom Plaintiff seeks to compare must be similarly-situated in "all of the

relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). The failure to identify a similarly situated employee who was treated more favorably than Plaintiff is fatal to the Plaintiff's claim under a disparate treatment theory. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992). The similarly situated employee must have the same supervisor, be subject to the same standards and engaged in conduct of comparable seriousness to Plaintiff. *Id.*

As noted by Plaintiff in his brief, the following employees he identified as similarly situated are civilian employees, Mackey and Handy. These two employees are not similarly situated to Plaintiff because they are not police officers. Plaintiff has not disputed Chief Dwyer's deposition that police officer employees are held to a higher standard than civilian employees. (Dwyer Dep., pp. 55-56) As noted by the Sixth Circuit, the identified employee must be similarly-situated in "all of the relevant respects." *Ercegovich,* 154 F.3d at 352.

Robert Tiderington, as Plaintiff asserts, is a White FHPD police officer who was arrested by the Detroit Police Department for trying to pay his bar tab in a strip club with a counterfeit $20 bill. Tiderington was charged with several felonies and ultimately pled to disorderly person. Plaintiff claims Tiderington is a friend of Chief Dwyer and despite the heinous crimes he committed, he was not forced to resign as a condition of his plea agreement and continues to work actively on the road as an FHPD police officer. Plaintiff asserts Tiderington did not lose his seniority, his pay or retirement eligibility.

Defendants argue Tiderington is not similarly situated to Plaintiff because Tiderington challenged his termination pursuant to the grievance/appeal procedures. Plaintiff never filed such a grievance or sought to appeal his resignation. Defendants assert that, like Plaintiff, administrative charges were filed against Tiderington and he was suspended without pay pending an investigation.

11

(Ex. O, Defendants' Br.).

Plaintiff has not shown a genuine issue of material fact that Tiderington is similarly situated to Plaintiff because he was charged with a different crime than Plaintiff. Tiderington is similar to Plaintiff in that he pled guilty to some of the charges against him. Unlike Plaintiff, Tiderington went through the Police Trial Board process to challenge any personnel action. Plaintiff chose to resign from the FHPD, without going through the Police Trial Board process, where he could have challenged any benefit, seniority or pay issues.

Plaintiff identifies Stacey Swanderski-Van Meter, a White female officer, as similarly situated to him because she was disciplined for requesting overtime pay for court appearances which she did not attend. Plaintiff claims her case was not turned over to an outside agency. Plaintiff asserts she continues to work today for the FHPD and was not forced to resign.

Defendants argue that Swanderski-Van Meter is not similarly situated to Plaintiff because only officers suspected of misconduct involving money were referred to an outside agency for investigation. Swanderski-Van Meter was accused of falsifying time cards which are handled within the Department. (Dwyer Dep., p. 55) Defendants argue that falsifying three hours of overtime pay is not comparable to Plaintiff's conversion of over $7,000 in seized evidence. Defendants assert that Swanderski-Van Meter was administratively charged for her misconduct and suffered a 5-day unpaid suspension.

Plaintiff has not shown a genuine issue of material fact that Swanderski-Van Meter is similarly situated to Plaintiff given that the misconduct causing his termination–conversion of more than $7,000 in seized evidence. Plaintiff has not shown his actions are comparable to a charge of falsifying three hours of overtime. A misconduct causing a termination must be of "comparable

seriousness" to the misconduct of similarly-situated non-protected employee. *See Parker v. City of Toledo,* 178 F.3d 1295 (6th Cir. 1999).

Plaintiff identifies Lt. Anderson and Sgt Hubbard, both White officers, who were accused of sexual harassment against a female officer. Plaintiff claims these charges were never turned over to an outside agency for investigation. Plaintiff asserts that a settlement was reached between the parties. Anderson and Hubbard were not forced to resign and retained their benefits and pay.

Plaintiff has not shown a genuine issue of material fact that Anderson and Hubbard are similarly-situated to Plaintiff since the acts involved are not similar to the misconduct charged against Plaintiff.

Plaintiff claims that Mitchell Skazalski, a White officer, was arrested and charged with 4th degree criminal sexual conduct but that the investigation was not sent to an outside agency. Skazalski was allowed to apply for unemployment benefits and resigned from the Department without noting his misconduct which allowed Skazalski to apply for another police officer position in another jurisdiction.

Defendants argue that the charge against Skazalski is not similar to the charge against Plaintiff. Skazalski is not similarly-situated because he challenged the grievance against him pursuant to the collective bargaining agreement. Defendants assert Plaintiff never went through the grievance procedure after he resigned from the FHPD, although, like Plaintiff, he was suspended without pay pending an investigation.

Plaintiff has not shown a genuine issue of material fact that Sazalski is similarly situated to Plaintiff because the charge against Skazalski is not comparable to the charge against Plaintiff and Plaintiff did not go through the grievance procedure pursuant to the collective bargaining agreement.

Plaintiff did not challenge his pay and benefits in accordance with the collective bargaining agreement.

As to Plaintiff's argument that Defendants failed to provide him with documents relating to other officers, Plaintiff has failed to show that he sought to compel such documents be produced by Defendants. If such documents were not provided to Plaintiff pursuant to discovery requests, Plaintiff should have filed the appropriate motion, as provided under the Rules of Civil Procedures.

Even if Plaintiff is able to identify an employee who was similarly situated to him but was treated differently, Plaintiff is unable to show that he suffered an adverse action by Defendants. Plaintiff cannot establish a *prima facie* case of discrimination based on race.

### D. Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff's intentional infliction of emotional distress claim must be dismissed because Plaintiff is unable to show outrageous conduct on behalf of Defendants. The elements of intentional infliction of emotional distress are: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress. *Doe v. Mills*, 212 Mich. App. 73, 91 (1995); *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985).

Plaintiff's Complaint fails to state outrageous conduct by Defendants since he only incorporates his general allegations of discrimination in his intentional infliction of emotional distress claim. As noted above, Plaintiff voluntarily resigned from his position after he entered a plea of guilty before the Oakland County Circuit Court. Defendants have properly supported their summary judgment motion on this claim and Plaintiff has not submitted sufficient evidence to rebut Defendants' motion. Plaintiff's intentional infliction of emotional distress claim must be dismissed.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment (**Doc. No. 30, filed 1/13/2011**) is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: May 31, 2011


I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2011, by electronic and/or ordinary mail.

S/Johnetta M. Curry-Williams
For LaShawn R. Saulsberry
Case Manager

15